Good morning, members of the court. Kelly Smith for Appellants SPRAWLDEF and Sierra Club. This is, strictly speaking, a case of mootness. It's our position that despite the amended record of decision that there remains a live controversy regarding eucalyptus thinning versus removal in conjunction with the catastrophic fire protection program of the East Bay Hills. The complaint read as a whole continues to state that controversy. The project continues to be fully funded and the prayer in the complaint clearly requests a full and fair discussion of the issue. What remains fully funded? The entire amount of the funds will be used by the East Bay Regional Park District to continue to do what was identified in the project. But FEMA withdrew its funding of proposed funding of the Berkeley-Oakland projects, is that right? You know, they refused to fund those projects, yes. They had proposed to fund them. Right. And then they pulled it back, because we're not going to fund them. Kind of. Kind of. Well, where am I wrong? Well, it's that the project has changed, but the entire project and the environmental impact report upon which it's based, the environmental analysis, all the analysis, what analysis there is regarding thinning, eucalyptus, its impact on endangered species, its impact on biota, whether it works to prevent fires at all, what long-term benefits. Just to clarify, the areas that had been part of the Berkeley and Oakland project are no longer going to be subject to activity that's funded by FEMA. That's correct. Okay. That's absolutely the case. That's what the amended ROD says. But what does that really do? I mean, the project goes forward, the EIR is still in place, the Berkeley challenge. This is a NEPA action. It challenges the underlying environmental analysis and the complaint. Well, let me back you up just a little bit. I want to – so as I understand, there were initially two different approaches, correct? There was the East Bay approach, which was more thinning over time. Okay. Right? And then there was the Oakland-Berkeley approach, which was – Did not have thinning. Did not have thinning. It was more on removal. Correct. Is that basically – am I – just basically understand that correctly? You can distinguish between the projects that way. And then, of course, the – after the – Correct. And they focused that on the Oakland-Berkeley areas. Well – Is that right? The methodology doesn't change the two components that you already identified. But was that – you know, when I read the record and I read your opposition to – or your motion for summary judgment, and then your reply to all the other cross motions for summary judgment, the whole challenge seemed to be when FEMA adopted the unified methodology approach to certain unified areas – Strawberry Canyon, the area around Claremont Hills. I don't think – And that's what's – I'm just – what I read – I'm just saying what I read. I mean, so if I didn't read it correctly, tell me. Sure. And I don't think that's a fair reading, Your Honor. I think a fair reading of the complaint and our issue – I was talking about your motion, the summary judgment proceedings, just so I could understand. I did that because I wanted to see what your focus was. Well, I don't know if that's fair either because that summary judgment was submitted when there was a unified methodology, what they called the unified methodology. Now, I would submit that that's nothing but a handle for the tweaking of the original project by requiring the University of California in Oakland to include some thinning in there so that they could call the whole project unified. So the thinning – as I read the record, it seemed like Oakland-Berkeley would start with thinning, but over the period of 5 to 10 years would result in elimination. So it was still a distinct project. Is that correct? Yes. It is. It is. And – Whereas the East Bay Parks was retained there – were going to leave strands of these trees, so it wasn't resulting in elimination. That's right. Okay. So it's a distinct – And that was the original project. And it didn't really change when they started calling it a unified methodology. In fact, nothing changed. And in fact – and I will refer the Court to page 50 in our excerpts – where FEMA – FEMA states that in the comments – in the public review process that there were concerns that this unified methodology would make it difficult to review the EIS under NEPA because it was confusing to people. And they said, it doesn't really matter. We don't have to do any supplemental work because it doesn't change anything. It says that. So FEMA introduced this unified methodology for the Oakland and Berkeley areas after the draft EIS. It was first reported in the final EIS. And it seemed that your clients protested on the ground that you can't suddenly – I think it was the word – you can't suddenly introduce this new approach without having a period for notice and public comment. Wasn't that the thrust of the argument at that point? No, it's not, Your Honor. It's really not. So you didn't have any concerns about them putting in this new method for the Berkeley-Oakland areas after the draft EIS reported for the first time in the final EIS? Only that it becomes an obfuscation for the real controversy. The real controversy is not towards unified methodology. Because that's not what you said in the summary judgment motion. It was – the only thing we're looking at is this sudden introduction of the unified methodology. Well, first of all, again, we were addressing the fact that it was in the record of decision at the time. And so our complaint was focused on the vagueness and the evasion of the true underlying issue – the true underlying controversy between the thinning and the restoration of native habitat by the use of this obscure term. And so the fact that we had to focus on it in the summary judgment arguments was because it was in the project at the time. Our point here now – Let me ask you this. So what's the challenge, then, to the East Bay project? The same, Your Honor. It never evaluated thinning versus restoration of native habitat. Still hasn't. That analogy – Oh, it absolutely was, Your Honor. I think if you look at the prayer of the complaint, it says – You were seeking to – and you take exception to the district court's failure to grant you an opportunity to amend. Why were you amending? We would amend to take out any reference to unified methodology if we had to. And to make it clear that the controversy was this thinning versus removal of the eucalyptus, because obviously people get very confused by the fact that it's in there. And simply removing it, our argument is, that that doesn't change the project, the fact that it's funded and that it goes forward. So NEPA, you know, it's not a substantive statute. That is, it doesn't require certain results. It requires a certain process. Absolutely, Your Honor. You're absolutely right. And that's the problem here. So what was the – what was deficient in the process with respect to the East Bay methodology? That really highlights the deficiency here, and that's the lack of a full and fair argument of these two alternatives in the EIR. And so when they added the – what they call the unified methodology, they said, we don't have to go back and look at it because it doesn't really change anything. Well, so let's – they've removed – they removed – let's say they – they say they removed the unified methodology. Right? As I understand, is that – am I wrong? The unified methodology didn't really mean anything, but if they don't – I'm just going to say, if you take it out, what is wrong? It never analyzed, for the purposes of NEPA, thinning versus native habitat restoration. It never did. And the public was thereby derived by this little shell game called the unified methodology of that discussion. If we take another – if I take another careful look at the complaint, the first amended complaint, which I believe is the operative complaint. Correct. Is that right? It is. If I take a look at that first amended complaint, I'm going to see what you just said in the allegations. Absolutely. And I wish you would do that. All right. Are you suggesting that if no one ever mentioned the word thinning or thinning meant to do an appropriate EIS on the East Bay Project, someone should have considered thinning? Oh, I mean, this controversy is very significant, Your Honor. White hot, in fact. Hundreds of people testify when they come to this on either side. It is the issue. And it was stated in the complaint. It's stated throughout the record. It's identified throughout the record. And it's our position that all that FEMA's doing is trying to evade that controversy with this vague unified methodology. And that – to remove that term and somehow say that that controversy is gone is a grave disservice to the public participation and notification process that NEPA really is. It's a disclosure document. And this evasion undermines it completely. I'll reserve the rest of my time if I can. Okay. That's fine. Thank you. Good morning, Your Honors. Varooj Cholukamari for the United States. I have with me at counsel's table Tamara Gallanter from the Park District and also Shiraz Tanjimi from the University. And I'll be giving five minutes of my time to Ms. Gallanter from the Parks District. Your Honors, in this case, the sprawl death plaintiffs brought this challenge to FEMA's review of the unified methodology. And that methodology was a very specific vegetation treatment plan that applied to two areas, two sub-areas within the University in Oakland sites. And that was what they were challenging. Your Honors are correct that the unified methodology is different from what is happening on the East Bay Park District lands. The unified methodology involves thinning and phased removal of the trees over a 10-year period with the ultimate effect of removing the overstory of the eucalyptus. The sprawl death plaintiffs brought this case because they were unhappy with the unified methodology. They believed it wasn't drastic enough or fast enough. And they preferred more immediate clear-cutting of the eucalyptus on those UC and Oakland sub-areas. But in 2016, when FEMA amended the decision and withdrew the funding for the UC and Oakland areas, the unified methodology was no more. That was not going to be happening. And that's when the sprawl death plaintiffs case became moot. Let me ask you. So their concern about the methodology thinning versus clear-cutting or removing, removal of the eucalyptus, why doesn't that also apply to the East Bay area? Well, first of all, I think... And were they trying to attack that methodology in the East Bay area when the complaint started, when they first filed the complaint? No. I think, number one, they were not trying to attack that. They were very specific in their complaint, but also in the subsequent litigation, their briefs, that what they were challenging was the unified methodology and only that methodology on the specific sub-areas of UC and Oakland. And I think it's not true to suggest that the unified methodology is a vague term that nobody understands because what's important here is that the plaintiffs understood it and in their briefs they actually described and defined what it was and they said that this is in their summary judgment briefs. This is at SER 313. They said plaintiff's complaint is not with the whole project across 1,000 acres. Plaintiff's complaint here is with the unified methodology. The unified methodology applies only to the four critical university and Oakland sub-areas. And then they even have a footnote, footnote 2 at SER 313, that defines the unified methodology the same way that the environmental impact statement defines it. So we were all talking about the same exact treatment method that was happening on those sub-areas. So the summary judgment briefs, I thought, were very clear that the focus was on the Berkeley and Oakland areas. But there are some more general statements in the complaint as opposing counsel indicated where they say generally that there was a violation of NEPA due to the failure of FEMA to properly describe and evaluate alternatives associated with the invasive non-native overstory species and the creation of long-term stable native plant communities. And I take it that's what opposing counsel was referring to when he said there was at least a general claim of a failure to consider alternatives for thinning versus native plant restoration. Then the complaint goes on and talks about the Berkeley-Oakland areas. But what do we do with these general statements in the complaint? So we make two arguments, Your Honor. First, we agree that the district court with her construction of the complaint. And I think that those statements that you point to are simply labels and conclusions. They say that under NEPA you have a duty to evaluate alternatives and then they vaguely talk about invasive species. But read as a whole, it is clear that what they are alleging, the specific failure, the agency failure that they're pointing to, is with the unified methodology. And under Ashcroft v. Iqbal, it's not enough to just simply point to general statements, but you have to identify what it is that the agency did wrong. And all of the statements in the complaint that actually pinpoint what it is that we did wrong and that they're pointing to all relate to the unified methodology. We also argue that, you know, at a minimum, if the complaint was vague, the plaintiffs have construed it as narrow and so should this Court. They have told us in the summary judgment papers and also at the motion to dismiss hearing when the judge gave them another opportunity to say what their claim was, they specifically, and this was their, I think, final opportunity, to argue that they might have had a different claim. But at the motion to dismiss hearing, this is at SCR 393, they say that, quote, nothing's been changed in the EIS. It still refers to a unified methodology. And then at SCR 398, we're not going to bring in other arguments against the EIS. At SCR 401, the cases about the EIS, it still says unified methodology. So I think given their own statements and their own construction of their complaint, it was correct for the district court to view it that way. And I want to also address, I know Judge Paez asked a question about the thinning versus overstory removal. Again, we think that their complaint was limited to that specific unified methodology treatment, but the record is clear that FEMA did consider the controversy between thinning versus overstory removal. And at SCR 107 to 110, there's actually a chart that's entitled tradeoffs between thinning and overstory removal, where FEMA went through, in terms of the entire project, it looked at what would happen between complete overstory removal versus thinning, and they looked at it in terms of the aesthetics, effects on erosion and landslides, effects on fire hazards, effects on vegetation, and all of those things. And they... Including in the East Bay area? Well, this was an assessment of just what the different methods, the impacts of those methods overall. And they also looked at it in terms of the unified methodology areas, and that's at SCR 161 to 171. And again, NEPA does not require that FEMA pick a particular alternative. It requires that we looked at the alternatives. And here, there are a variety of reasons, depending on the landscapes, that you would choose one method versus another. And for a park district, where their goal is to retain a certain landscape, that makes sense. So what I thought would happen here was that they need a hook. You know, for NEPA, you need a hook. You need to be able to point to procedural violation. And that it seemed rather compelling that the unified methodology was another alternative that wasn't thoroughly vetted. It wasn't... It was sort of sprung on the public, and that provided a clear argument for them to argue that they should go back and redo this. But that's been removed, and so the question in my mind is, well, what are they challenging with respect to the East Bay? And I was trying to... I'll take a look at that particular chart. I think that they don't have a claim with respect to the park district. What they have argued to the district court was that because the environmental impact statement sort of still exists out there, and there's still a description of the unified methodology in that environmental impact statement, they argued to the district court judge that their challenge should still remain live. But this court has said that in the Rattlesnake decision and in the Oregon National Desert cases, that an EIS standing alone, and the analysis in an EIS standing alone that's not tied to a decision, is not an agency action that you can challenge. So what they told the district court was just because the EIS says unified methodology, we still have a claim. And they don't, because as the district court noted, it's not its job to allow plaintiffs to bring hypothetical challenges. If the projects involving the university and the county were to be restored, would anything in that EIS be binding on that project? Or would a new EIS process begin? An additional NEPA review would have to begin, and that's explained in the amended record of decision. They would have to go back and review it again, and that would be perhaps another situation that a plaintiff could raise challenges to. What's the status of those other two, of the Oakland and Berkeley projects? The funding has been withdrawn, and there is a challenge in the district court that's been brought by the university challenging the withdrawal of that funding. But that's a separate case. I see. That was pursuant to a settlement, is that right? There was a settlement agreement when a different group, a conservation group, brought a challenge, again, to the unified methodology sites. And that was a settlement that occurred. Yes, Your Honor. Were you sharing time with your colleague? Yes, and I would like to leave the remaining of my time unless there's any other questions. Thank you. Can you adjust the microphone? Because it seems like it was going in and out. Okay, thank you. Good morning, Your Honors. May it please the Court, Tamara Gallanter, on behalf of the East Bay Regional Park District. And I'd like to use my time this morning to provide the Park District's perspective on the issues before the Court. The FEMA grant funding at issue in this litigation will allow the Park District to partially implement its wildlife hazard reduction and resource management plan. And the Park District adopted this plan way back in 2010 after a multiyear participatory process and environmental review under the California Environmental Equality Act. Now, throughout this litigation, Spraldoff has led the Park District to believe that its concern was over the unified methodology, which would be applied on only 28 acres, not even all of the acres, but just 28 acres, within UC and Oakland. And notably, it would not be by or within the Park District. Now, Spraldoff had multiple opportunities to raise claims related to the funding of the Park District's work. But at every turn, Spraldoff confirmed that their lawsuit challenged only the unified methodology. First, in the complaint, and if you look at the introduction to the complaint and the first paragraphs, it's very clear what plaintiffs are challenging. They're challenging what they view as a last-minute switch in the work that was going to be done to the unified methodology. And I agree with Justice Paez that this was, yeah, this was an excellent legal hook for challenging the EIS. But then, the motion for summary judgment briefing confirms that reading. But even if you could read the complaint to challenge the funding for the Park District's removal and thinning of flammable trees and fuels, Spraldoff's summary judgment briefs made absolutely clear what Spraldoff was challenging, namely the decision to change the treatment method on 28 acres within UC and Oakland. And, you know, from the Park District's perspective, we, you know, eagerly looked at the opening brief, and what we saw was that there was no challenge to the funding for the Park District. All the arguments related just to 28 acres. So in our cross-motion, we called that out. We said, we just want to make sure, and we said at SCR 259, quote, plaintiff's lawsuit does not challenge the Park District's plans to remove vegetation in its treatment areas. And we repeated a similar statement at SCR 266 in our brief. So this was really Spraldoff's opportunity to say, hey, no, you're wrong. This case is more than about the unified methodology. We care about what the Park District is doing and the thinning methods it is using. But plaintiff's reply brief did not do that. It did not contest or correct the Park District's characterization of Spraldoff's briefs. But it went further than that because it wasn't silent either. It actually explicitly conceded that its legal claims did not relate to the removal of vegetation in the Park District. And I just want to repeat the quote that was in their brief that Council for FEMA also claimed because it's so perfectly clear and amounts to a waiver. The summary judgment proceeding. Exactly. And it says, quote, plaintiff's complaint is not with a project across 1,000 acres. Plaintiff's complaint here is with the unified methodology. And then in the next paragraph, Spraldoff concedes that, quote, the unified methodology applied only to the four critical university and Oakland sub-areas, end quote. And this is at SCR 313. And notably, the word only is underlined. So given these clear representations, even if the complaint could be read to include claims broader than the unified methodology, Spraldoff, with their motion for summary judgment briefing and their explicit statements, waived any claim they may have had against the fire management work the Park District will do with FEMA funds. And they don't get a do-over. Was the summary judgment proceeding one of these sort of agreed upon procedural devices to resolve the case that everybody was file your motion and raise every claim you got? Let's resolve this case on summary judgment. Exactly, Your Honor. As is with most NEPA cases, this case is disposed on. It's based on a record. And it's all decided through these cross motions for summary judgment. So there wasn't going to be any air briefing. Anything that needed to be made needed to be made in these briefs. And I understand. Spraldoff made strategic decisions about how to litigate this case. And then that didn't pan out. But the Park District should not be penalized because these decisions did not prove fruitful. Let me ask you this. So when all this happened, and even though summary judgment briefing had been completed, should the district court have granted them leave to amend? No, Your Honor. I do not believe. Were they part of the settlement negotiations? There were two different pieces of litigation. So FEMA first negotiated with the other conservation group and then afterwards negotiated with Spraldoff. And well, first of all, there was no abuse of discretion. As found by the district court, it found that leave to amend would not be appropriate because there was undue delay and prejudice to the Park District. And maybe I can touch a little bit on that prejudice. What would be the prejudice? Well, the prejudice would be that to allow Spraldoff to now litigate claims it could have but chose not to litigate during the past two years would mean we'd have another two years of litigation and it would mean the Park District would not have the certainty that it needs about FEMA funding. It won't know whether it will ultimately have the funding it needs to fund this critical fire management work. And as a result, you know, it made very specific decisions about work on the ground in terms of implementing its fire plan based on knowing that it would have funding. And it made budgeting decisions about where to direct its resources. Spraldoff asked the district court, we'd like leave to amend and here's what we'll do if we're given leave to – here's what we'll allege if we're given leave to amend. No, Your Honor. Spraldoff – in fact, it's hard to even tell that Spraldoff asked for leave to amend because it didn't do so in its motion, in its opposition to its motion. But the district court read its – during its oral argument and said, well, it sounds like you want leave to amend. And then in order described why. But there was never any official motion for leave to amend or to supplement. This all came up in the oral argument. No motion for reconsideration on leave to amend. There was no motion for reconsideration. If we're given leave to amend, here's what we'll do. No. And never a proposed second amended complaint submitted to the district court. There was no – there was never any proposed amended complaint. Thank you, Counsel. Thank you, Your Honor. We did request leave to amend to address the thinning versus the restoration controversy. If I were to look in the record, where would I find that? I think – I'm not sure. I don't have it at the tip of my fingers. Did you submit a proposed amended complaint? No, we did not. All that's true. And there's a total mischaracterization of the settlement agreement in the other case and what transpired. And I think it might be important. FEMA got new counsel and started negotiating in this other case with the Hillside Conservation Network. We had no part in that. Probably in conjunction with that, FEMA then delayed a number of the hearings on the summary judgment. The summary judgment was all done. But ultimately, didn't you have – it's because of what you had in your complaint that you didn't have a role in that? That you weren't aggrieved by the negotiations to settle the district case? No, no. That wasn't part of the target? No. I think the target was, as you could understand in negotiations, is that they would carve out HCN and then try to sign us off. And we didn't – when they said – when they approached us after the deal was done with HCN, we said, no, absolutely not. I thought Hillside Conservation Network was complaining about removal of trees. They wanted all the trees to stay in place. Correct. I thought that was their – whereas Sprawled F wanted the elimination of the trees. Exactly. Exactly. And so then they came after us. And I think that's important because it really goes to the unfairness and the burden to the park district, which was no doubt negotiating with FEMA to get all the money that was authorized by this project. Was Park District part of the settlement with Hills Conservation Network? Yes. Yeah, it was. If FEMA money would have come online for the two parcels, the Oakland and Berkeley parcels, is anything that's happened now prejudice Sprawled in any way? Oh, greatly so, Your Honor. Again, this is a very controversial project. In Oakland especially. And yet I want to point out that Oakland and Berkeley is where the real fire threat is. The park district has lands further inland. Now, these are cumulative projects. They were brought into this project because there were cumulative impacts and considerations of fire jumping into these other jurisdictions where lives were lost in Oakland at the last major fire, where these canyons that you see has fires will sweep down close to homes and lives and so forth. And so the political aspects in those jurisdictions, especially Oakland, again, is critical. And when you have the EIR process, remember, they were talking about other EIRs done, the State Environmental Review, that those are lengthy, controverted projects. But we did not sign off and we were not involved. And there was no unified methodology when the park district did its state-level EIR. Remember, that didn't come up until after the draft amendment in the final. And nothing was changed until then. And so it was really a last-minute tag-on that we had to address and then is pulled out from under our feet when we tried to do so. Your Honor, you identified that as the project, as the alternative. It's not an alternative. The alternatives are thinning versus native habitat restoration. That's in the record of what the project is. It goes to what this project is supposed to do, eliminate the threat. Is that the way FEMA defined the alternatives in the EIS? Sorry? Is that the way FEMA identified the alternatives in the EIS? It did not, and that's our issue. It did not address them as alternatives, look and analyze them head-to-head and provide the – Let me ask you this. When the summary judgment motions were agreed upon, you know, the way in which the case was going to be resolved, why didn't you raise these claims and these arguments in the motion for summary? I've read your summary judgment motion. Well, the first argument is to the project as a whole in the thinning and the native habitat restoration. The second one is to the unified methodology. Walker v. Byrd, for example, Byrd, Byrd, Byrd, this circuit's case, says that when you address that subsidiary argument, you aren't somehow abandoning the underlying theory of the case, and the underlying theory is this thinning versus restoration. Got it. Thank you, counsel. We appreciate your arguments. We appreciate arguments on both sides. The matter is submitted at this time.
judges: Paez, Ikuta, Vitaliano